[Docket Nos. 37, 40, 41]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CANON FINANCIAL SERVICES, INC., | |
| Plaintiff, | Civil No. 18-16332 (RMB/AMD) |
| v. | **OPINION** |
| PALOMAR REPROGRAPHICS, | |
| Defendant / Third-Party Plaintiff, | |
| v. | |
| CANON SOLUTIONS AMERICA, INC., | |
| Third-Party Defendant. | |

APPEARANCES:

Eisenberg, Gold & Agrawal, P.C.
By:  Andrew L. Unterlack, Esq.
1040 Kings Highway North, Suite 200
Cherry Hill, New Jersey 08034
        Counsel for Plaintiff

David J. Khawam, Esq.
Sentry Office Plaza, Suite 604
216 Haddon Avenue
Westmont, New Jersey 08108
        Counsel for Defendant / Third-Party Plaintiff

Archer & Greiner, P.C.
By:  Trevor J. Cooney, Esq.
One Centennial Square, P.O. Box 3000
Haddonfield, New Jersey 08033
        Counsel for Third-Party Defendant

1

**BUMB,** UNITED STATES DISTRICT JUDGE:

This is a breach of contract suit concerning a commercial lease of a Canon copier and a separate contract for the service and maintenance of the copier.

Presently before the Court are: (1) Defendant / Third-Party Plaintiff Palomar Reprographics' Inc.'s Motion to Transfer Venue pursuant to 28 U.S.C. § 1406(a) and § 1404(a); (2) Plaintiff Canon Financial Services, Inc.'s ("CFS") Motion for Summary Judgment; and (3) Third-Party Defendant Canon Solutions America, Inc.'s ("CSA") Motion for Summary Judgment. Palomar has filed no opposition to the Motions for Summary Judgment. For the reasons set forth herein, the Motion to Transfer Venue will be denied in its entirety, CSA's Motion for Summary Judgment will be granted; and CFS' Motion for Summary Judgment will be granted in part and denied in part.

I.  **FACTUAL AND PROCEDURAL BACKGROUND[1]**

   A.  **The Lease Agreement between CFS and Palomar**

On September 29, 2015, Palomar executed a Lease Agreement with CFS, whereby Palomar agreed to lease a Canon IRC800 copier and related accessories from CFS. (CFS' Statement of Undisputed Facts "SUF" ¶¶ 1, 3)  CFS and Palomar had previously entered into six (6) prior lease agreements.  (Id. ¶ 2)  CFS purchased the leased

---

[1] The facts are taken from CFS' and CSA's Statements of Undisputed Facts which are deemed admitted pursuant to L. Civ. R. 56.1 because Palomar has filed no opposition to the motions for summary judgment. See *infra* at Section II. C.

2

equipment from Third-Party Defendant CSA for the specific purpose of leasing the equipment to Palomar. (Id. ¶ 4)

"Palomar executed the Lease upon its own business determination and was not under duress or otherwise coerced by CFS into execution thereof." (CFS' SUF ¶ 10)  In the Lease, Palomar agreed to pay CFS sixty-three (63) monthly payments of $1,900.00 each, plus applicable taxes. (Id. ¶ 11)

The relevant portions of the Lease provide:

If Customer fails to pay any sum to be paid by Customer to CFS under this Agreement on or before the applicable due date, Customer shall pay CFS, upon demand, an amount equal to ten percent (10%) of each such delayed Payment or ten dollars ($10) whichever is greater for each billing period or portion of a billing period such Payment is delayed to the extent permitted by law.  The amounts specified above shall be paid as liquidated damages and as compensation for CFS's internal operating expenses incurred in connection with such late payment.

. . .

Customer shall reimburse CFS for all of its out-of-pocket costs and expenses incurred in exercising any of its rights or remedies under this Agreement or in enforcing any of the terms and provision of this Agreement, including, without limitation, reasonable attorney's fees and expenses and fees and expenses of collection agencies, whether or not suit is brought. If CFS should bring court action, Customer and CFS agree that attorney's fees equal to twenty-five percent (25%) of the total amount sought by CFS shall be deemed reasonable for purpose of this Agreement.

. . .

Any of the following events or conditions shall constitute an Event of Default under this Agreement: (a) if Customer defaults in the payment when due of any indebtedness of Customer to CFS, whether or not arising under this Agreement, without notice or demand by CFS ...

> Upon the happening of any one or more Events of Default, CFS shall have the right to exercise any one or all of the following remedies (which shall be cumulative), simultaneously, or serially, and in any order: (a) to declare all unpaid Payments and other amounts due and payable under this Agreement, with CFS retaining title to the Equipment; (b) terminate any and all agreements with Customer;... In the event the Equipment is not available for sale, the Customer shall be liable for the Remaining Lease Balance and any other amounts due under this Agreement.
>
> . . .
>
> Unless the Agreement automatically renews or Customer purchases the Equipment as provided in this Agreement, Customer shall, at the termination of this Agreement, return the Equipment at its sole costs and expense in good operating condition, ordinary wear and tear resulting from proper use excepted, to a location specified by CFS.
>
> . . .
>
> THIS AGREEMENT HAS BEEN EXECUTED BY CFS IN, AND SHALL FOR ALL PURPOSES BE DEEMED A CONTRACT ENTERED INTO IN THE STATE OF NEW JERSEY. THE RIGHTS OF THE PARTIES UNDER THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REFERENCE TO CONFLICT OF LAW PRINCIPLES. ANY ACTION BETWEEN CUSTOMER AND CFS SHALL BE BROUGHT IN ANY STATE OR FEDERAL COURT LOCATED IN THE COUNTY OF CAMDEN OR BURLINGTON, NEW JERSEY OR AT CFS' SOLE OPTION WHERE THE EQUIPMENT IS LOCATED.  CUSTOMER, BY ITS EXECUTION AND DELIVERY HEREOF, IRREVOCABLY WAIVES OBJECTIONS TO THE JURISDICTION OF SUCH COURTS AND OBJECTIONS TO VENUE AND CONVENIENCE OF FORUM. CUSTOMER, BY ITS EXECUTION AND DELIVERY HEREOF, AND CFS, BY ITS ACCEPTANCE HEREOF, HEREBY WAIVES ANY RIGHT TO A JURY TRIAL IN ANY SUCH PROCEEDINGS.

(Unterlack Cert. Ex. C-- Lease Agreement)(caps in original)

Palomar defaulted on the Lease by failing to make the required monthly payment for May 1, 2017 and each month thereafter. (CFS' SUF ¶ 25)  CFS has declared the entire accelerated balance to be immediately due and payable.  (Id. ¶ 26)  Palomar has failed to return the copier and other equipment to CFS, and retains exclusive

care, custody and possession of those items, to the exclusion of CFS. (Id. ¶ 30)

### B. The Maintenance Agreement between Palomar and CSA

On September 23, 2015 Palomar and CSA entered into a Maintenance Agreement whereby CSA would provide maintenance and repair services for the Canon copier Palomar leased from CFS. (Cooney Cert. Ex. G; CSA's SUF ¶¶ 6-7) Between September 2015 and May 2017, CSA technicians responded to all of Palomar's service calls even though Palomar admittedly stopped paying CSA's invoices sometime in January or February 2017, resulting in a total outstanding balance of $12,211.36. (CSA's SUF ¶¶ 11-15)

The relevant portion of the Maintenance Agreement provides:

> GOVERNING LAW. THIS AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. . . . ANY SUIT BETWEEN THE PARTIES HERETO, OTHER THAN ONE SEEKING PAYMENT OF AMOUNTS DUE HEREUNDER, SHALL <u>BE COMMENCED, IF AT ALL, WITHIN ONE (1) YEAR OF THE DATE THAT THE CLAIM ACCRUES.</u>

(Cooney Cert. Ex. G)(caps and underline in original).

## II. LEGAL STANDARDS

### A. § 1406(a)

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Whether venue is "wrong" or "improper" depends exclusively

on whether court in which case was brought satisfies requirements of federal venue laws, irrespective of any forum-selection clause that may apply in case. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49 (2013); see also, Howmedica Osteonics Corp. v. DJO Glob., Inc., 2017 WL 1136671, at *3 (D.N.J. Mar. 27, 2017) ("In Atlantic Marine, the Supreme Court made clear that forum selection clauses have no impact on whether a venue is improper; venue is determined exclusively by federal venue laws. As a result, the Employee Defendants' forum selection clauses have no bearing on the Court's venue analysis.") (collecting cases).

### B.   § 1404(a)

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

Where the parties to a contract "have specified the forum in which they will litigate disputes arising from their contract, federal courts must honor the forum-selection clause '[i]n all but the most unusual cases.'" In re: Howmedica Osteonics Corp., 867 F.3d 390, 397 (3d Cir. 2017) (quoting Atl. Marine Const. Co.).

### C.   Summary Judgment

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

"[W]hen a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)). In the face of a properly supported motion for summary judgment, the nonmovant's burden is rigorous: he "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord, Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")). Failure to sustain this burden will result in entry of judgment for the moving party.

The same basic legal analysis applies when a summary judgment motion is unopposed, Anchorage Associates v. Virgin Islands Board of Tax Review, 922 F.2d 168 (3d Cir. 1990), however, the material facts put forth by the movant are deemed undisputed pursuant to L. Civ. R. 56.1(a) ("any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.").

### III. ANALYSIS

#### A. § 1406(a)

Palomar argues that under the general venue statute, 28 U.S.C. § 1391, the Southern District of California is a proper venue, and the District of New Jersey is an improper venue. This argument fails, however, because Palomar removed this suit from New Jersey state court. In the removal context, the proper venue is "the district court of the United States for the district and division embracing the place where [the state court] action is pending." 28 U.S.C. § 1441(a); see also 28 U.S.C.A. § 1390(c) (providing that the general venue provisions "shall not determine the district court to which a civil action pending in a State court may be removed, but shall govern the transfer of an action so removed as between districts and divisions of the United States courts."); Kerobo v. Sw. Clean Fuels, Corp., 285 F.3d 531, 535 (6th Cir. 2002) ("There is only one federal venue into which a state court action may be removed, and that is in the statutorily dictated 'district court ... for the district and division embracing the place where [the state court] action [was] pending.'") (quoting § 1441); Manley v. Navmar Applied Scis. Corp., 2012 WL 5588757 at *2 (E.D. Pa. Nov. 14, 2012) ("However, § 1391 does not apply here because Navmar removed this case from state court. Thus, the removal statute governs the question of venue and provides for removal 'to the district court of the United States for the district and division embracing the place where [the state action] is

pending.' 28 U.S.C. § 1441(a)."). This suit was removed from New Jersey state court, therefore the District of New Jersey is the proper venue by operation of 28 U.S.C. § 1441(a).

Accordingly, the Court holds that venue in this District is proper. Palomar's § 1406(a) motion will be denied.

### B.   § 1404(a)

In arguing that the Southern District of California would be a more convenient forum, Palomar asserts that almost all of the witnesses to be called at trial reside in Southern California. This argument, however, ignores the legal effect of the parties' forum selection clause. As the Supreme Court has explained, "[w]hen parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum." Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas, 571 U.S. 49, 64 (2013).

Palomar proffers nothing "unusual" about this case that would support departure from the preselected forum, Howmedica, 867 F.3d at 397, and the parties' selection of New Jersey law to govern their dispute further militates against transfer. See Atl. Marine Const. Co., 571 U.S. at 62 n.6 (stating that one of the public factors to consider in the 1404(a) analysis is the law to be applied).

Moreover, Palomar's attempts to invalidate the forum selection clause fail.[2]  Forum selection clauses "are prima facie valid and should be enforced unless the enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972). "A forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' either that the forum selection clause is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' or that the clause was procured through 'fraud or overreaching.' " Foster v. Chesapeake Ins. Co., 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting M/S Bremen, 407 U.S. at 15).[3]

First, Palomar asserts that enforcement of the forum selection clause is unreasonable because the clause allegedly was the product of "overweening bargaining power between the parties." (Moving Brief, p. 20)  The facts before the Court, however, indicate otherwise. Palomar is undisputedly a commercial entity that leased a commercial

---

[2]  Palomar also argues that the forum selection clause is permissive, not mandatory, however, Palomar's argument in this regard contravenes the clear and unambiguous language of the clause.  The clause plainly indicates that the suit "shall" be brought in a state or federal court within Camden or Burlington counties unless at CFS' "sole option," CFS selects the venue where the equipment is located. As far as Palomar is concerned, it has no choice other than a state or federal court within Camden or Burlington counties.  Moreover, even CFS is not free to select any forum it chooses.  It simply has one more choice than Palomar.

[3]  A forum selection clause may also be held unenforceable on public policy grounds.  Foster, 933 F.2d at 1219.  Palomar makes no public policy argument in this case.

copier for business purposes.  Indeed, the Lease expressly states that it is a finance lease governed by Article 2A of the U.C.C., and it is undisputed that Palomar had executed six nearly identical leases with CFS prior to the Lease at issue. (CFS' SUF ¶¶ 19, 24) Moreover, nothing in the record indicates that the Lease was not negotiated at arms' length.  That CFS apparently used a form contract which Palomar alleges it was not free to alter does not render the forum selection clause unenforceable.  See Foster, 933 F.2d at 1219 ("Where the agreement is an arms-length deal, between sophisticated commercial entities, the lack of actual negotiations over the forum selection clause does not affect its validity.").

Second, Palomar asserts that the forum selection clause is unenforceable because "forcing the parties in this case to litigate in New Jersey would be seriously inconvenient for trial." (Moving Brief, p. 26)  In order to render a forum selection clause unenforceable, however, the logistical challenges must be more than inconvenient; the obstacles must effectively deprive a party of its day in court.  M/S Bremen, 407 U.S. at 15.  Palomar has not met this high standard.  Although Palomar asserts that holding trial in this Court would be a "logistical impossibility" due to most witnesses residing in Southern California (Moving Brief, p. 12), the Court disagrees.  The Federal Rules of Evidence provide tools for presenting the testimony of unavailable witnesses. See, e.g., Fed. R. Evid. 804; see also, McNair v. Monsanto Co., 279 F. Supp. 2d 1290,

11

1302 (M.D. Ga. 2003) ("Litigants are not necessarily deprived of their day in court because they have to use deposition testimony rather than live testimony in a trial. The use of deposition testimony for some witnesses in the event of trial is sometimes more cost effective and regularly used.").[4] Accordingly, Palomar has not carried its burden of demonstrating that enforcing the parties' forum selection would effectively deprive Palomar of its day in court.

Accordingly, the Court holds that the parties' forum selection clause is enforceable, and that, in accordance with Atlantic Marine Construction, the 1404(a) analysis does not support a transfer to the Southern District of California.[5] Palomar's § 1404(a) motion will be denied.

### C. CFS' Motion for Summary Judgment

Plaintiff CFS moves for summary judgment as to its breach of contract claim against Palomar.[6] CFS has put forth sufficient

---

[4] In the Lease Agreement, Palomar has waived its right to a jury trial. This fact further weighs against a conclusion that the inability to present live witnesses would effectively deprive Palomar of its day in court.

[5] In light of this holding, the Court does not reach CFS' argument that Palomar waived its § 1404(a) argument when it signed the Lease Agreement which states that Palomar "irrevocably waives objections to venue and convenience of forum." (Compl. Ex. A)

[6] The Complaint asserts two counts-- breach of the Lease and conversion of the copier-- but CFS's Motion for Summary Judgment only addresses the breach of contract claim. Moreover, CFS does not appear to seek, at this time, any relief designed specifically to remedy Palomar's unauthorized retention of the copier. Rather, CFS only seeks monetary damages as provided by the Lease agreement.

evidence supporting a finding that Palomar breached the Lease when it stopped paying CFS' invoices, beginning with the May 1, 2017 invoice. (CFS' SUF ¶ 25) Moreover, there can be no issue of disputed fact as to Palomar's failure to pay, because Palomar has filed no opposition to CFS' motion, and therefore has failed to carry its summary judgment burden of raising an issue of disputed material fact.

Under New Jersey law[7], CFS has put forth sufficient evidence of Palomar's default under the Lease because the Lease expressly states that failure to "pay[] when due any indebtedness of Customer to CFS . . . without notice or demand by CFS" (CFS' SUF ¶ 21) is an event of default. See N.J.S.A. § 12A:2A-501(1) ("Whether the lessor or the lessee is in default under a lease contract is determined by the lease agreement and this chapter."). Accordingly, the only remaining issue is CFS's remedy for the default.

CFS seeks money damages as provided by the Lease Agreement.[8] Specifically, CFS seeks, *inter alia*, the accelerated balance on the Lease, late charges on past due payments, out of-pocket costs and expenses, and attorneys fees as itemized by CFS' Senior Legal Specialist, Irene Giuseppini:

---

[7] In the Lease agreement, the parties selected New Jersey law--particularly Section 2A of the U.C.C.-- to govern this dispute.

[8] See N.J.S.A. § 12A:2A-523(1)(3)(f) ("If a lessee . . . fails to make a payment when due . . . then, with respect to any goods involved . . . , the lessee is in default under the lease contract and the lessor may: . . . (f) exercise any other rights or pursue any other remedies provided in the lease contract.").

13

|  |  |
|---|---|
| Remaining Lease Balance (discounted to the present value of 6%) | $80,617.19 |
| Purchase Option Price per Lease (Fair Market Value) | $26,001.75 |
| Sales/Use Tax | $8,262.97 |
| Property Tax | $527.65 |
| Late Charges | $10,640.00 |
| Miscellaneous Sales Tax | $40.89 |
| **Subtotal:** | **$126,090.45** |
| PLUS – Legal Fees per Lease (through 2/7/2020) | $16,550.00 |
| **Total Due and Owing:** | **$142,640.45** |

(Giuseppini Decl. ¶ 38)

The Court finds, however, that CFS has not carried its summary judgment burden as to the $26,001.75 charge entitled "Purchase Option Price per Lease (Fair Market Value)." The Giuseppini Declaration states that "[p]ursuant to ¶ 16 of the Lease, based upon Palomar's default and retention of the [copier and related equipment], Palomar is liable for the remaining Lease balance and other amounts due under this Agreement, including without limitation, the Purchase Option Price." (Giuseppini Decl. ¶ 37) However, Lease ¶ 16 (as reproduced by CFS in the Giuseppini Declaration ¶ 28[9]) does not provide support for the conclusion that CFS may deem Palomar's retention of the copier as exercising a Purchase Option under the Lease. According to the Giuseppini Declaration ¶ 28, Lease ¶ 16 states:

---

[9] A copy of the Lease Agreement is provided as Exhibits C/D to CFS' Motion for Summary Judgment, however, the reproduction quality is poor, rendering the Lease practically illegible.

> "Upon the happening of any one or more Events of Default, CFS shall have the right to exercise any one or all of the following remedies (which shall be cumulative), simultaneously, or serially, , and in any order: (a) to declare all unpaid Payments and other amounts due and payable under this Agreement, with CFS retaining title to the Equipment; (b) terminate any and all agreements with Customer;... In the event the Equipment is not available for sale, the Customer shall be liable for the Remaining Lease Balance and any other amounts due under this Agreement."
> See, Exhibits C/D at ¶16.

Thus, ¶ 16 says nothing about a purchase option. Indeed, the Lease states that CFS "retains title to the Equipment," which is inconsistent with CFS' apparent position that Palomar has exercised a purchase option provided in the Lease. Moreover, CFS' position is also inconsistent with CFS' conversion claim, which CFS' papers conspicuously ignore. Thus, the Court holds that CFS is not entitled to summary judgment as to the $26,001.75 charge, and will reduce the judgment CFS seeks by that amount for a total judgment of $116,638.70.

Accordingly, CFS' Motion for Summary Judgment as to the breach of contract claim will be granted in part and denied in part. Further, CFS shall advise the Court within 10 days whether it wishes to dismiss the conversion claim, and the remainder of the breach of contract claim as it pertains to the purchase option charge, as provided by Fed. R. Civ. P. 41.

### D. CSA's Motion for Summary Judgment

Third-Party Defendant CSA moves for summary judgment as to Palomar's breach of the Maintenance Agreement claim. CSA argues: (1)

15

Palomar's claim is time-barred by the parties' contractual agreement to limit the statute of limitation to one year, and (2) the record evidence demonstrates that CSA did not breach the Maintenance Agreement.  The Court agrees with both arguments.

Under New York law[10], parties to a contract may agree to a shorter statute of limitations applicable to disputes arising under the contract.  Exec. Plaza, LLC v. Peerless Ins. Co., 22 N.Y.3d 511, 518, 5 N.E.3d 989, 991 (2014); see also N.Y. U.C.C. Law § 2-725.  In this case, the parties clearly and unambiguously agreed to a one-year statute of limitations.  Palomar's claim for breach of the Maintenance Agreement accrued, at the latest, upon its last service call to CSA which occurred on May 9, 2017.  (Batsford Dep. p. 42-43; Cooney Cert. Ex. K-- CSA's log of Palomar's service calls)  Yet Palomar did not file the Third-Party Complaint against CSA until December 14, 2018-- i.e., over seven months late.  Thus, the Court

---

[10]  In the Maintenance Agreement, the parties selected New York law to govern their dispute. (Cooney Cert. Ex. G)  CSA's brief analyzes the legal issues under New York common law, the U.C.C., and New Jersey law.  The Court holds that New York common law applies.  The choice-of-law provision in the parties' agreement excludes New Jersey law as an option, and while New York has adopted the U.C.C., the U.C.C. does not apply to service contracts.  Alternatively, to the extent that the Maintenance Agreement may be considered incident to the Lease Agreement, and therefore subject to the U.C.C., see Richard A. Rosenblatt & Co. v. Davidge Data Sys. Corp., 295 A.D.2d 168, 169, 743 N.Y.S.2d 471, 472 (2002), there is no conflict between New York common law and New York's U.C.C. as to the legal issues presented.

16

holds that Palomar's breach of contract claim against CSA is time-barred.

Alternatively, the breach of the Maintenance Agreement claim fails on the merits.  It is undisputed-- because Palomar has filed no opposition to the instant motion-- that CSA honored its contractual obligations insofar as it responded to every service call Palomar placed. (CSA SUF ¶ 11-12)  Indeed, the undisputed record evidence demonstrates that Palomar, not CSA, breached the Maintenance Agreement in January or February 2017, when Palomar stopped paying CSA's invoices, yet CSA continued to perform under the Maintenance Agreement for at least another two and a half months. (CSA SUF ¶ 14-15)  Thus, the record evidence fails to support a finding of CSA's breach of the Maintenance Agreement.

Accordingly, CSA's Motion for Summary Judgment will be granted.

**IV. CONCLUSION**

For the foregoing reasons, Palomar's Motion to Transfer Venue will be denied in its entirety, CFS's Motion for Summary Judgment will be granted in part and denied in part, and CSA's Motion for Summary Judgment will be granted.  An appropriate Order shall issue on this date, and a separate Judgment in the amount of $116,638.70 will be entered in favor of CFS and against Palomar.  Further, CFS shall advise the Court within 10 days whether it wishes to dismiss the conversion claim, and the remainder of the breach of contract

17

claim as it pertains to the purchase option charge, as provided by Fed. R. Civ. P. 41.

Dated: August 3rd, 2020

_____
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

18